### UNITED STATES of America, Plaintiff–Appellee,

v.

### Jose VASQUEZ, a/k/a Ricardo Guzman, Defendant–Appellant.

### No. 87–5240.

United States Court of Appeals, Eleventh Circuit.

June 13, 1989.

William Donald Matthewman, Coral Gables, Fla., for defendant-appellant.

Thomas J. Mulvihill, Lynne W. Lamprecht, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, Chief Circuit Judge, VANCE, Circuit Judge, and EVANS *, District Judge.

PER CURIAM:

Jose Vasquez appeals his conviction for conspiracy to deliver counterfeit federal reserve notes. We affirm.

On August 13, 1986, Secret Service Agent Jesus Torres and an informant went to Nelson Castellanos' home. Torres told Castellanos that he was from New York and represented individuals who wanted to purchase counterfeit money. Torres purchased a $2100 sample from Castellanos and told him that he wanted to purchase an additional $500,000 in counterfeit currency. At the conclusion of the meeting, Secret Service agents arrested Castellanos and searched his house. Inside the house the agents discovered an additional $150,000 in counterfeit fifty dollar bills.

Castellanos gave a complete statement to Agent Torres, admitting his guilt and implicating appellant Vasquez as the source of the counterfeit money. Castellanos then agreed to cooperate with the government. The next morning Torres and Castellanos travelled to Vasquez's home where Torres overheard a conversation between Castellanos and Vasquez. Later that day, when Vasquez left his home in an automobile, agents stopped the car and found two counterfeit fifty dollar bills inside the owner's manual. The two bills were made from the same plate as the counterfeit notes that were discovered in Castellanos' house.

The grand jury indicted Vasquez on one count of conspiring with Castellanos to deliver counterfeit federal reserve notes, 18 U.S.C. §§ 371 & 473, two counts of possession of counterfeit federal reserve notes with intent to defraud, 18 U.S.C. § 472, and one count of delivery of counterfeit federal reserve notes, 18 U.S.C. § 473. The grand jury also indicated Castellanos on several counterfeiting charges.[1] The two defendants were tried jointly; neither chose to testify. Vasquez was convicted on the conspiracy count and acquitted of all other charges.[2] The district court sentenced him to five years imprisonment and a $10,000 fine. The court also ordered him to stand committed until the fine is paid.

■ Vasquez's first contention on appeal is that the evidence was insufficient to support his conviction for conspiring with Castellanos. In addressing this argument, we must view the evidence in the light most favorable to the government and may reverse only if no reasonable trier of fact could have found Vasquez guilty beyond a reasonable doubt. *United States v. Montes–Cardenas*, 746 F.2d 771, 778 (11th Cir.1984).

■ The government's key evidence of conspiracy was the testimony of Agent Torres, who overheard the conversation between Vasquez and Castellanos in Vasquez's home. Torres testified as follows:

I heard Mr. Castellanos tell Vasquez, "[Torres is] the guy from New York. He wants the $500,000. He is the one that's going to buy the $500,000." Mr. Vasquez answered, "Like I told you before, I don't have any more. I would have to contact the guy, my source," or whatever, "but, I will let you know when I get a hold of him."

At the time of this conversation, Castellanos was acting as a government agent. Vasquez argues that one cannot conspire with a government agent and therefore the conversation does not raise the inference of a conspiracy. We agree that one cannot conspire with a government agent. *See United States v. Tombrello*, 666 F.2d 485,

---

* Honorable Orinda D. Evans, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. The grand jury indicted Castellanos on one count of conspiring with Vasquez to deliver counterfeit federal reserve notes, 18 U.S.C. §§ 371 & 473, one count of possession of counterfeit federal reserve notes with intent to defraud, 18 U.S.C. § 472, and one count of receipt of counterfeit federal reserve notes, 18 U.S.C. § 473.

2. Castellanos was convicted on all three counts for which he was charged.

490 n. 3 (11th Cir.), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982). There is no question, therefore, that the conversation between Vasquez and Castellanos cannot establish that a conspiracy between the two men existed at the time of the conversation. The content of the conversation, however, does raise an inference that the two men were engaged in a conspiracy prior to the conversation, before Castellanos became a government agent. Vasquez spoke of not having "any more" counterfeit money. From these words, together with other evidence before it, the jury reasonably could have found that the two men had exchanged counterfeit money before. Identical counterfeit currency was discovered in the possession of both defendants and from this and the conversation between the two men, it was reasonable for the jury to conclude that they were participating in the conspiracy as charged.

Vasquez argues that there are other, nonincriminating interpretations of the conversation that are just as reasonable. Whether or not he is correct, the evidence is sufficient to sustain his conviction so long as the interpretation chosen by the jury was reasonable:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (in banc) (footnote omitted), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). We therefore conclude that the evidence was sufficient to support Vasquez's conviction.

■ Before trial, Vasquez moved for a severance of his trial from that of Castellanos or in the alternative for the redaction of the confession by codefendant Castella-

nos. The district court denied the motion for severance, but ordered the confession redacted. Castellanos' confession was admitted into evidence at trial through the testimony of Agent Torres. When testifying as to what Castellanos told him, Torres carefully referred to Vasquez only as an "individual":

> [Castellanos] said he had known an individual named Ronnie who had advised him that Ronnie had a friend that was involved in dealing counterfeit and was he interested. Mr. Castellanos claims to tell Ronnie no I'm not interested. Eventually, Ronnie introduced Mr. Castellanos to this other individual. The individual approached him, told him, "Listen, I have this counterfeit I would like to get rid of it, whatever. Would you do it for me, and again," Mr. Castellanos claimed that he turned him down.

> . . . .

> . . . [T]he individual approached him again and says, "Listen, I have this counterfeit. I am going on a trip with my wife to Colombia. I want you to get rid of it for me, sell it, get whatever you can out of it and I will give you something for selling it."

> At this point, Mr. Castellanos received the briefcase and he also told me he received an additional bag of counterfeit in addition to the briefcase.

Vasquez now contends that the admission of Castellanos' confession violated his right of confrontation under the sixth amendment.

In *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968), the Supreme Court held that when there is a substantial risk that the jury, despite instructions to the contrary, will use the incriminating extrajudicial statement of one defendant as evidence of the guilt of his codefendant, admission of the statement in a joint trial violates the codefendant's rights under the confrontation clause.[3] In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176

---

**3.** The record in this case reflects that no limiting instruction was given to the jury concerning Castellanos' confession. At no time, however,

did Vasquez request that such an instruction be given.

(1987), however, the Court held that the admission of a nontestifying codefendant's confession does not violate *Bruton* if the confession is redacted to eliminate all reference to the other codefendant's name and existence. The standard in this circuit, which is consistent with *Marsh,* is that a redacted confession only violates *Bruton* if it compels a direct, rather than indirect, implication of the complaining defendant. *See United States v. Pendegraph,* 791 F.2d 1462, 1465 (11th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 235, 93 L.Ed.2d 160 (1986) (citing *United States v. Garrett,* 727 F.2d 1003, 1013–14 (11th Cir.1984), *aff'd on other grounds,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)).

Castellanos' confession was redacted to eliminate all references to Vasquez's name, but not to his existence. Instead, the neutral word "individual" was substituted for Vasquez's name. We previously have recognized that *Bruton* is not necessarily violated when a general word is substituted for a defendant's name. *See United States v. Satterfield,* 743 F.2d 827, 849 (11th Cir.1984), *cert. denied* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985) (redaction of confession to substitute "people" for names of defendants did not violate *Bruton* ). Thus, the admission in a joint trial of a codefendant's confession that is redacted to substitute a neutral pronoun or other general word for the name of the complaining defendant does not violate *Bruton* so long as the confession does not compel a direct implication of the complaining defendant.[4]

We believe that the jury was not compelled to conclude that Vasquez was the individual referred to in Castellanos' redacted confession. There was no evidence before the jury suggesting that Vasquez was the only source from which Castellanos obtained his counterfeit money. Nor was there any evidence before the jury that Vasquez was married or had made a recent trip to Colombia. In short, there was noth-

ing in the confession itself or the record as a whole that would have directly linked Vasquez in the minds of the jury as the "individual" referred to in Castellanos' confession.

In addition, the jury's verdict indicated that it in fact did not reach such a conclusion. One of the possession counts for which Vasquez was indicted concerned the same incident referred to in Castellanos' confession. Vasquez was acquitted of that charge. We have no doubt, therefore, that the jury did not use Castellanos' confession to determine Vasquez's guilt.

 Vasquez raises several other issues on appeal. We have carefully considered these contentions and conclude that they have no merit. Only one warrants discussion. This is Vasquez's contention that the district court erred by ordering him, under the provisions of 18 U.S.C. § 3565(a)(1),[5] to stand committed until his fine is paid. Section 3565(a)(1) provides in part:

> If the court finds by a preponderance of the information relied upon in imposing sentence that the defendant has the present ability to pay a fine or penalty, the judgment may direct imprisonment until the fine or penalty is paid, and the issue of execution on the judgment shall not discharge the defendant from imprisonment until the amount of the judgment is paid.

We have reviewed the presentence investigation report and the transcript of the sentencing proceeding in which the court found that Vasquez had the present ability to pay the $10,000 fine. We conclude that the court's finding was not clearly erroneous. Should circumstances change, however, and Vasquez then be unable to pay the fine, it would be unconstitutional to require him to stand committed until the fine is paid. *See Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct.

---

**4.** The *Marsh* Court expressed no opinion on the admissibility of a confession in which the defendant's name is replaced with a symbol or neutral pronoun. *Richardson,* 481 U.S. at 211 n. 5, 107 S.Ct. at 1709 n. 5.

**5.** This section has been repealed, but is effective for offenses committed before November 1, 1986.

2018, 26 L.Ed.2d 586 (1970). We therefore affirm the district court's judgment, but expressly do so without prejudice to Vasquez's right to pursue further proceedings at an appropriate time.

AFFIRMED.